In re DEWS.

(District Court, D. Rhode Island. June 24, 1899.)

1. BANKRUPTCY—OPPOSITION TO DISCHARGE—CONCEALMENT OF PROPERTY.
   Where policies of insurance on the life of the bankrupt are payable to his wife as beneficiary, and there is no proof that the premiums paid by the bankrupt were so excessive in amount as to justify the inference of an intended fraud on his creditors, money realized by the surrender of such policies is the property of the wife; and the bankrupt's omission to disclose such fund to his trustee is not a fraudulent concealment of property of his estate, such as to forfeit his right to a discharge.

2. SAME—FAILURE TO KEEP BOOKS.
   Bankruptcy Act 1898, § 14, b (2), providing that a discharge shall not be granted if the bankrupt has, "with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy, failed to keep books of account," does not apply to cases where the failure to keep books was antecedent to the passage of the act.

In Bankruptcy. On application of the bankrupt for discharge.

Loren M. Cook and Sam'l W. K. Allen, for petitioner.
Charles H. Tyler and H. C. Bolles, for creditor.

BROWN, District Judge. The Washington National Bank, opposing the discharge of the bankrupt, sets forth its first ground of opposition as follows:

(1) Because the bankrupt has knowingly and fraudulently concealed, while a bankrupt, from his trustee property belonging to his estate in bankruptcy, to wit: (a) A property interest in the property and business of the Livingstone Woolen Mills. (b) A property interest in the property and business of the Livingstone Mills, acquired by money realized upon policies of life insurance upon the life of said bankrupt, and invested in the property and business of said woolen mills, through the medium of his son, J. Howard Dews.

The only property to which, under the evidence as submitted, these specifications can relate, is the sums arising from the surrender of certain life insurance policies upon the life of the bankrupt. The wife of the bankrupt was the beneficiary, and upon the surrender of the policies the proceeds were her property.

In Bank v. Hume, 128 U. S. 195, 206, 209, 9 Sup. Ct. 44, it was said:

"It is, indeed, the general rule that a policy, and the money to become due under it, belongs to the person or persons named in it, and that there is no

power in the person procuring the insurance, by any act of his, by deed or will, to transfer to any other person the interest of the person named."

While it is true that the payment of large premiums, out of all reasonable proportion to the known or reputed financial condition of the person paying, and under circumstances of grave suspicion, may justify the inference of fraud on creditors in the withdrawal of such an amount from the debtor's resources, the present proofs are too meager to show that this was the fact in the present case, or to support a finding that Mrs. Dews, through the payment by her husband of an excessive amount for premiums, has received money which, ex æquo et bono, is the property of her husband's creditors. Nor is the true question now before us an inquiry whether the creditors of the bankrupt have an equitable right to any portion of these funds. It is whether the bankrupt has been guilty of knowingly and fraudulently concealing this property from his trustee. I am of the opinion that the failure of the bankrupt to disclose this property to his trustee was consistent with an honest intention, and was not a fraudulent concealment. The first specification must be overruled. The second specification falls with the first.

The third specification charges the failure, with fraudulent intent and in contemplation of bankruptcy, to keep books of account or records, from which the bankrupt's true condition might be ascertained, "from the date of his failure, in 1889, to the date of filing this petition in bankruptcy." The finding as to the first specification disposes also of so much of the third specification as relates to the failure of the bankrupt to keep accounts relative to property in the Livingstone Woolen Mills. In support of the remainder of its third specification, the objector relies upon acts committed long before the passage of the bankruptcy act of 1898, namely, during the period from August, 1889, to the early part of January, 1897. There is strong authority, however, for the bankrupt's contention that section 14, b (2), is limited to acts committed after the passage of the bankruptcy act. In re Shorer, 1 Nat. Bankr. News, 331, 96 Fed. 90; In re Stark, 1 Nat. Bankr. News, 232, 96 Fed. 88; In re Holtz, 1 Nat. Bankr. News, 204; Buckingham v. McLean, 13 How. 150; Black, Bankr. p. 86; Coll. Bankr. 135, 137; In re Holman, 92 Fed. 512. While the question is not free from doubt, I am inclined to think that the narrower interpretation of the statute should be adopted. The third specification is overruled.

The specifications relating to matters occurring prior to the date of the application for a discharge I find not to be sustained. They are therefore dismissed.

The additional specifications, filed after the oral hearing, and based upon the acts of the bankrupt in the hearing before me, give rise to a serious question. Though the matter was argued by counsel for the objector, and called to the attention of counsel for the bankrupt, no argument of this question was submitted on behalf of the bankrupt, nor was the attention of the court called to such parts of the testimony as may be favorable to the bankrupt on this issue. I am unwilling to determine this question merely upon the argument of the objector and my own unaided recollection of the testimony. I therefore deem it

proper to direct the attention of counsel for the bankrupt to the importance of the additional specifications, and to grant them permission to file within 30 days a brief setting forth such parts of the evidence and such arguments as they may deem favorable to the bankrupt on the issue presented by the additional specifications; the objector, the Washington National Bank, to have leave to file a brief in reply, if it shall so desire.